In re Shirley M. CORBLY, Debtor.

CITY OF COLTON, Colton, South Dakota, Plaintiff,

v.

Shirley M. CORBLY, Defendant.

Bankruptcy No. 484–00310.
Adv. No. 485–0016.

United States Bankruptcy Court,
D. South Dakota.

June 4, 1986.

Rick A. Yarnall, Moore, Rasmussen, Kading & McGreevy, Sioux Falls, S.D., for plaintiff.

Doug Cummings, Sioux Falls, S.D., for defendant.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### Introduction

This matter is before the Court on a complaint for nondischargeability of debt

filed on behalf of the City of Colton ("City"), Colton, South Dakota, by Attorney Rick A. Yarnall on February 19, 1985. The City substantively alleges that: 1) the state court judgment which it received against the debtor is for "willful and malicious injury by the debtor" and is, therefore, nondischargeable under Bankruptcy Code Section 523(a)(6); and 2) the state court judgment which it received against the debtor is not for pecuniary loss but is either a fine or penalty to and for the benefit of a governmental unit and is, therefore, nondischargeable under Bankruptcy Code Section 523(a)(7). Attorney Doug Cummings represented Shirley M. Corbly ("debtor"), and a trial was held in Sioux Falls, South Dakota, on November 21, 1985.

## Background

City and debtor have been locked in legal combat for over six years. Apparently, it all began in late 1979 when the debtor built an addition onto a house in which she was a co-owner without first applying for a building permit. To dutifully protect the people of Colton against such "flagrant" behavior, the City filed a complaint in the Second Judicial Circuit Court requesting a permanent injunction enjoining use or occupancy and immediate removal of this addition.[1]

A trial in state court was held on December 29, 1980, and applicable findings of fact and conclusions of law were issued on January 14, 1981. In pertinent part, they read as follows:

## FINDINGS OF FACT

### I.

That the [City of Colton] is a municipal corporation located in Minnehaha County, South Dakota.

### II.

That the [debtor] was at the time of the trial herein the sole owner, and at all times material herein was either sole owner or co-owner, of the following described real property:

Lot 4, Block 7, of the First Addition to the City of Colton, Minnehaha County, South Dakota, according to the recorded plat thereof, also known as 406 South Main.

### III.

That the [City of Colton] has in accordance with law adopted a zoning ordinance for all land within the corporate limits of the city of Colton, namely Ordinance No. 104.

. . . .

### V.

That the said Ordinance No. 104 requires in pertinent part, that no building or other structure shall be erected, moved, added to, or structurally altered without permit therefor having been issued by the Administrative Official under said Ordinance.

### VI.

That there has been erected since on or about November 3, 1979, on the above-mentioned real estate, now owned solely by [the debtor], an addition to a previously existing residential structure.

### VII.

That no permit for the construction of said addition has ever been applied for under said Ordinance No. 104, and no such permit has ever been issued for said

---

1. Named defendants included Shirley Corbly, Richard Corbly (Shirley's husband), Caroline Johnson (Shirley's mother), and Clinton Johnson (Shirley's father). At the time the complaint was filed, the parties owned the property as joint tenants, but, apparently, the circuit court found Mrs. Corbly to be the sole owner at the date of the trial. Other than Mrs. Corbly, these parties were not involved in any subsequent proceedings.

addition by the administrative official under said Ordinance No. 104.

## VIII.

That the provisions of Ordinance No. 104 have at no time been made inapplicable to [the debtor] by virtue of any order, writ, decision or other act or event.

### CONCLUSIONS OF LAW

. . . .

## VI.

That the [debtor] has failed to comply with the requirements imposed by said Ordinance No. 104 for the issuance of a use permit prior to the construction of the addition undertaken by the [debtor] in this matter, upon said real property.

## VII.

[A] permanent injunction enjoining and restraining the [debtor] from using or occupying, or permitting others to use or occupy, the addition constructed on the real property described above, and a permanent mandatory injunction ordering the [debtor] to forthwith remove said addition from said real property, is appropriate.

Let permanent injunction be entered accordingly.

An order consistent with these conclusions of law was also issued on this date.

On August 1, 1982, a state court judge ordered the debtor to appear on a certain date to show cause as to why she should not be found in contempt for violating the court's previous injunction order. A hearing was held on September 2, 1982, and applicable findings of fact and conclusions of law were issued on December 8, 1982. In pertinent part, they read as follows:

### FINDINGS OF FACT

#### I.

On January 13, 1981, this Court signed . . . a mandatory injunction in connection with this matter which required, among other things, that the [debtor] forthwith remove the addition constructed added to [her] premises.

. . . .

## III.

That the [debtor] appealed the decision of this Court to the Supreme Court, and on April 14, 1982, the South Dakota Supreme Court affirmed the decision of this Court, and on May 21, 1982, the South Dakota Supreme Court denied the [debtor's] petition for re-hearing.

## IV.

At the hearing held in connection with this matter on September 2, 1982, [the debtor] admitted in open Court that she had not obeyed this Court's mandatory injunction, and that she had not removed the addition in question, and that she never would.

. . . .

## VI.

At said hearing held before this Court on September 2, 1982, [the debtor] presented no sufficient legal justification for her failure to comply with this Court's mandatory injunction.

### CONCLUSIONS OF LAW

. . . .

## II.

[The debtor] is in contempt of this Court for her willful and contumacious failure to obey this Court's mandatory injunction dated . . . January 13, 1981, in that she has willfully and contumaciously refused to remove the addition at issue in the matter, without sufficient legal justification.

An order consistent with these conclusions of law was also issued on this date.

A hearing to determine the "appropriate punishment" of the debtor was held on

February 25, 1983, and a judgment filed on March 1, 1983. In pertinent part, it read as follows:

> ORDERED, ADJUDGED AND DE-CREED that ... the City of Colton, a Municipal Corporation, have and recover judgment against the [debtor] in the amount of seven thousand eight hundred twenty-four dollars and ninety cents, ($7,824.90) for damages, attorney fees, and costs, plus taxable costs to be taxed and inserted by the clerk....
>
> FURTHERED [sic] ORDERED, AD-JUDGED AND DECREED that the [debtor] may purge herself of the contempt which this Court has found forthwith and not later than three months from the date of the filing of this Judgment by complying with the prior Mandatory Injunction of this Court dated ... January 13, 1981, and by paying to the [City of Colton] attorney fees and costs incurred, in the amount of $4,824.90, plus the taxable costs previously allowed.

### Issues

The principal issues raised are: 1) Whether the City of Colton's state court contempt judgment, which it received against the debtor, is for "willful and malicious injury by the debtor" under Bankruptcy Code Section 523(a)(6); and 2) Whether the City of Colton's state court contempt judgment, which it received against the debtor, is a fine or penalty to and for the benefit of a governmental unit under Bankruptcy Code Section 523(a)(7).

### Law

#### A. First Issue

As to the first issue, the Court finds that the City has failed to show that contempt judgments are properly within the purview of Section 523(a)(6); and, even if they are within the purview of Section 523(a)(6), the City has failed to clearly prove that it was "willfully and maliciously" injured by this debtor under that section. The Court, therefore, holds that the $7,824.90 contempt judgment is not precluded discharge under Bankruptcy Code Section 523(a)(6).

Section 523(a)(6) finds nondischargeable any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Eighth Circuit recently defined what standard applies for determining "willful and malicious" injury when transfers of property in breach of security agreements are in issue. *In re Long,* 774 F.2d 875, 879–82 (8th Cir.1985). Adopting the "intent to cause injury" rather than the "intentional act which causes an injury" standard, the court held that: 1) willful and malicious are independent elements which must be separately analyzed; and 2) willful means "headstrong and knowing" and malicious means that the expected harm which is targeted at the creditor must be certain or almost certain to occur. *Id.* at 880–81. A reckless disregard standard is insufficient. *Id.* at 881. *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

■ One of the primary purposes of bankruptcy law is to give an honest debtor a fresh start in life without the burden of pre-existing debts. *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Local Loan Co. v. Hunt,* 292 U.S. 234 (1934). In keeping with this policy, exceptions to discharge are strictly construed and evidence must be viewed in the light most favorable to the debtor. *In re Long,* 774 F.2d at 879. Accordingly, the burden of proof is upon the City to establish by clear, cogent, and convincing evidence that the act in question was willful and malicious. *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929); *In re Weingarten,* 49 B.R. 881 (Bkrtcy.N.D.Ohio 1985); *In re Irvin,* 31 B.R. 251 (Bkrtcy.D. Colo.1983); *In re Marini,* 28 B.R. 262 (Bkrtcy.E.D.N.Y.1983).

■ In the instant case, the City neither alleges nor do the facts independently show that the debtor intentionally or deliberately violated the City's permit ordinance at the time when she built her addition. The mere act of violating the City's permit ordinance does not itself constitute a "will-

ful and malicious injury" by the debtor under Section 523(a)(6). *See In re Weingarten,* 49 B.R. 881 (Bkrtcy.N.D.Ohio 1985). (A doctor who performed an operation which was outside of his statutorily prescribed duties was not denied discharge because the violating of a statute itself does not constitute a willful and malicious injury under Section 523(a)(6).)

■ The question becomes whether the debtor's refusal to abide by the state court's injunction and removal order constitutes "willful and malicious injury by the debtor" to the City under Section 523(a)(6). As to this issue, the Court holds that: 1) contempt judgments are outside the purview of Section 523(a)(6) and; 2) even if contempt judgments are within the purview of Section 523(a)(6), the City failed to prove that it was "willfully and maliciously" injured by this debtor under that section.

Although ultimately finding that the plaintiff had failed to adequately prove "willful and malicious" intent, one court has summarily applied this section in a contempt matter. *In re Marini,* 28 B.R. 262 (Bkrtcy.E.D.N.Y.1983). *In re Marini* involved a debtor who entered into a stipulation to pay a $2,000 contempt fine for violating a restraining order. In applying this section, the court found that, although this was a contempt fine, the plaintiff had failed to prove that the debtor's intent was "willful and malicious"; but the court, thereafter, found the contempt fine nondischargeable under Section 523(a)(7). *Id.* at 265.

■ Section 523(a)(6) is intended only to apply to situations in which the debtor intentionally and deliberately injured another entity or its property. 11 U.S.C. § 523(a)(6). Courts almost only apply this to situations involving premeditated murder, assault, battery, libel, slander, conversion, and the like. 3 *Collier on Bankruptcy* ¶ 523.16 at 523–128 to –129 (15th ed. 1985). The City asserts that this section should also apply to acts which give rise to contempt judgments—that of refusing to obey a court's order. Its argument essentially is that, although this debtor did not

initially intend to violate the ordinance, her subsequent refusal to remove the property is clearly a willful and malicious injury (i.e., noncompliance with the ordinance). Besides the City of Colton's pride, its "injury" is mostly attorneys' fees. In strictly construing this section, the Court cannot find that an indirect violation of a city ordinance which was unintentional in the first place later becomes intentional due to noncompliance with a court's order and, therefore, is clearly transformed into a "willful" injury to the City or its property. Nor does this rise to "malicious" within the spirit of *In re Long.* See 774 F.2d at 881–82. Finally, the City has a remedy because contempt judgments may properly be considered excepted from discharge under Section 523(a)(7). *See In re Marini,* 28 B.R. at 262; *In re Gedeon,* 31 B.R. 942 (Bkrtcy.D. Colo.1983). *See also Parker v. United States,* 153 F.2d 66 (1st Cir.1946).

## B. Second Issue

As to the second issue, the Court finds that $3,000.00 of the $7,824.90 contempt judgment, which the City of Colton received against the debtor, is a fine or penalty to and for the benefit of a governmental unit and, therefore, holds that it is nondischargeable under Bankruptcy Code Section 523(a)(7). However, the Court also finds that the remaining $4,824.90 is compensation for actual pecuniary loss and, therefore, not precluded discharge under that section.

Section 523(a)(7) finds nondischargeable any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty...." 11 U.S.C. § 523(a)(7).

■ Courts determining contempt nondischargeability under this section find it dependent on whether the judgment is compensatory or imposed to uphold the dignity of the court. *In re Marini,* 28 B.R. 262, 265 (Bkrtcy.E.D.N.Y.1983); *In re Gedeon,* 31 B.R. 942, 945–46 (Bkrtcy.D.Colo.1983)

(civil or criminal contempt nature is determinative); *Parker v. United States*, 153 F.2d 66, 70–73 (1st Cir.1946); *see also, Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F.Supp. 758 (E.D.N.Y.1974); *In re Bell*, 53 F.Supp. 993 (E.D.N.Y.1943). A judgment which is compensatory and not imposed to uphold the dignity of the court is not precluded discharge under this section. *In re Marini*, 28 B.R. at 265; *In re Gedeon*, 31 B.R. at 945.

■ Courts are not bound by the judgment's criminal or civil contempt characterization but must look to surrounding circumstances for determining its true nature. *Id.* A requirement that the contempt judgment is directly payable to a creditor is not necessarily determinative of whether it is compensatory or imposed to uphold the dignity of the court. *Id.* Unfortunately, courts addressing this issue have not been uniform as to what factors may be considered for determining the true nature of the contempt judgment.

In the matter of *In re Gedeon*, 31 B.R. 942, the court essentially adopts a "conditional" payment test for determining the true nature of the contempt judgment. The court found a $42,500 contempt fine non-dischargeable because, although it was characterized by the state court as a civil contempt fine, it was imposed to uphold the dignity of that court. This judgment arose from a $500-a-day fine which was payable to the plaintiff and continued until such time as the defendant surrendered custody of their children to the plaintiff. Underlying this finding was that the $42,500 was unconditionally payable. The court, thereafter, found an additional $75,000 dischargeable because it was payable only if the defendant did not pay the plaintiff the initial $42,500.

In the matter of *In re Marini*, 28 B.R. 262, the court essentially adopts an "all the circumstances" test for determining the true nature of the contempt judgment. The court found a $2,000 contempt fine non-dischargeable because the stipulation which the parties entered into labeled it a fine, specifically agreed that it was a personal obligation of the debtor, its punitive nature was clear, and the state court may properly punish the debtor for having violated a temporary restraining order. *Id.* at 265–66. This fine arose from a violation of a temporary restraining order. *Id.*

■ This Court adopts the *Marini* court's "all the circumstances" approach for determining the true nature of the contempt judgment. According to the *Gedeon* court's approach, if the contempt fine is ever conditional, a court may never find that it was imposed to uphold the dignity of the court. This is inconsistent with that court's recognition that "whether a contempt fine is civil or criminal is not a matter that is clear-cut and easily determinable." 31 B.R. at 945. Implied in the *Gedeon* court's decision is that courts do not always artfully draft their contempt holdings. Apparent from these two cases and the facts in the instant case, contempt matters may arise in very different fact situations. Because of this, the Court will review all the circumstances for determining the true nature of the contempt judgment.

■ In the instant case, the City of Colton received a contempt judgment against the debtor in the amount of $7,824.90. According to the judgment, the debtor may purge herself if she complied with the state court's injunction and removal order and paid the City of Colton $4,824.90 in attorneys' fees and costs. If we applied the *Gedeon* court's "conditional" payment test, the $4,824.90 would not be dischargeable. Although payable to the City, attorneys' fees and costs are essentially nothing more than compensation for actual pecuniary loss which is excepted under Section 523(a)(7). Therefore, under all the circumstances, this Court holds that the $4,824.90 in attorneys' fees and costs is not precluded discharge under Section 523(a)(7), and the Court further holds that the remaining $3,000.00 is non-dischargeable because, regardless of its "conditional" payment character, the Court finds that it was imposed to uphold the dignity of the state court.

Accordingly, based on the foregoing, this Memorandum Decision constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and F.R.Civ.P. 52. Counsel for the City of Colton is directed to submit a proposed order and judgment in accordance with Bankr.R.P. 9021.