In re Walter E. LINDBERG and Margaret Lindberg, Debtors.

**GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,**

v.

Walter E. LINDBERG and Margaret Lindberg, Defendants.

Bankruptcy No. 84–828–L.
Adv. No. A84–294.

United States Bankruptcy Court,
D. Massachusetts.

May 7, 1985.

Mark N. Berman, Mary K. DeNevi, Widett, Slater & Goldman, Boston, Mass., for plaintiff.

Norman Novinsky, Brockton, Mass., for defendant.

## MEMORANDUM AND ORDER RE MOTION FOR SUMMARY JUDGMENT AND ENTRY OF SEPARATE JUDGMENT

THOMAS W. LAWLESS, Chief Judge.

This matter comes before the Court on plaintiff's Motion for Summary Judgment and Entry of Separate Judgment against Walter E. Lindberg with respect to the complaint of General Electric Credit Corporation ("GECC"). GECC's complaint seeks a determination that its claim against the debtors is non-dischargeable under §§ 523(a)(2), (4) and (6) of the Bankruptcy Code ("Code"). For the following reasons I find the claim to be nondischargeable with respect to Walter E. Lindberg pursuant to Code § 523(a)(6).

## FACTS

The facts are basically undisputed and are as follows. The debtors Walter E. Lindberg and Margaret Lindberg were the president and vice-president, respectively, of Lindberg's Inc. ("Lindberg's), which engaged in the business of selling keyboard instruments. Lindberg's inventory financing was provided by GECC. Under the terms of the so called "floor planning" agreement, Lindberg's was obligated to remit to GECC the principal amount borrowed to finance the purchase of an instrument either 90 days after GECC made the advance or upon sale of the instrument, whichever occurred sooner. The only advances GECC made to Lindberg's under the agreement were to finance the acquisition of inventory. The obligations of Lindberg's were personally guaranteed by the debtors.

GECC monitored Lindberg's compliance with the terms of their agreement by sending inventory inspectors to Lindberg's warehouse on a quarterly basis to verify the existence of inventory for which GECC had not yet received payment or notification of sale.

During 1982 Lindberg's failed to pay advances made by GECC when due. As a result, Lindberg's account went into default, and Lindberg's became obligated to immediately pay the balance of its indebtedness to GECC. Thereafter, on June 15, 1982, Lindberg's filed a voluntary petition under chapter 7 of the Bankruptcy Code.

On June 7, 1982, Mr. Lindberg informed GECC that, for a period of two years or longer, he had sold items of inventory financed by GECC without holding the proceeds in trust for GECC, notifying GECC of the sale or repaying GECC's advances with respect to those items. Instead, he kept the cartons that had contained the inventory, re-sealed them to make it appear that the items had not yet been sold and arranged them in his warehouse in such a way that GECC's inventory inspectors would be unable to closely inspect them. Lindberg admitted that he engaged in this practice because Lindberg's financial condition prevented him from making payments to GECC when due and that he did so with an intent to deceive GECC's inventory inspectors.

Upon learning of Mr. Lindberg's deception, GECC repossessed all the inventory it had financed that Mr. Lindberg had not yet sold and sold that inventory to the original vendors for full value, i.e. 100% of invoice price. Taking into consideration the proceeds received by GECC as a result of the sale of inventory, Lindberg's unpaid indebtedness to GECC under the agreement was then $196,200 [1]. GECC initiated suit in Bristol County Superior Court against the debtors as guarantors for collection of the debt, and obtained a judgment in the amount of $200,400 on June 27, 1984 [2].

On June 20, 1984, Walter E. and Margaret Lindberg filed for relief under Chapter

---

1. In mitigation of its damages, GECC also repossessed and sold inventory which it had not financed, but in which it had a duly perfected security interest.

2. The additional dollar amount represents attorney's fees and cost incurred by GECC to enforce its rights under the agreement, which Lindberg was obligated to pay under the guaranty.

7. On August 10, 1984, GECC filed a proof of claim in the amount of $200,400. On August 30, 1984, GECC filed an adversary complaint, seeking to except this claim from discharge.

## DISCUSSION

██ Section 523(a)(6) excepts from discharge a debt for "willful and malicious injury" by the debtor. Injury is considered "willful" if it is intentional and "malicious" if it results from "an intentional or conscious disregard of one's duties." *In re Trudeau*, 35 B.R. 185, 187 (Bankr.D.Mass. 1983). No showing of personal hatred, spite or ill-will is required to prove an injury malicious; it is enough that it was "wrongful and without just cause or excuse." *In re Askew*, 22 B.R. 641, 643 (Bankr.M.D.Ga.1982), *affirmed* 705 F.2d 469 (11th Cir.1983).

██ It is well established that a debtor's knowing sale of collateral without consent of or payment to the secured creditor constitutes wilfull and malicious injury under Code § 523(a)(6). *E.g., In re Emporelli*, 44 B.R. 124, 127 (Bankr.W.D.Pa.1984); *In re Clifton*, 32 B.R. 666, 668 (Bankr.D.N. M.1983). By depriving the secured creditor of the collateral, the debtor prevents the secured party from realizing on its security. The requisite willfulness and maliciousness are inferred from the debtor's conduct; where the debtor conceals the sale and thereby deprives the creditor of the proceeds, knowing that the security agreement requires him to pay the creditor, the debt will be held nondischargeable.

In a case similar to the instant case, *In the Matter of Klix*, 23 B.R. 187 (Bankr.E. D.Mich.1982), debtors, owners of a car dealership, had a floor planning arrangement under the terms of which the dealership, upon sale of a vehicle, was to remit to the creditor the amount borrowed to finance the purchase of the vehicle. The dealership's obligations under this agreement were personally guaranteed by the debtors. The corporate principal transferred title to three vehicles to a friend without receiving payment or remitting the principal amount borrowed to the creditor as required by the floor planning agreement. The creditor subsequently obtained a judgment for breach of contract. The dealership then filed a petition under Code chapter 7, and the creditor moved to have the judgment debt held nondischargeable under § 523(a)(6). The court held that the debtor had willfully and maliciously converted the vehicles in question, stating that:

> It would be difficult to find that [debtor] possessed a purposeful intent to harm [the creditor]. However, he knew that his act of conversion was in contravention of the rights of [the creditor], and he proceeded deliberately and intentionally in the face of that knowledge. Such an act, done intentionally and without justification or excuse, is a willful and malicious injury within the meaning of the exception provided by § 523(a)(6).

*Id.* at 190. *See e.g., In re Emporelli*, 44 B.R. 124 (Bankr.W.D.Pa.1984) (debt held nondischargeable under § 523(a)(6) where automobiles subject to floor planning agreement were sold without payment to creditor and sale proceeds used instead to pay operating expenses in hope that such practice would remain undetected until business conditions improved); *In re Silverman*, 13 B.R. 70 (Bankr.D.Mass.1981) (cause of action stated under § 523(a)(6) against auto dealership's president and guarantor of loan where president knowingly and intentionally violated floor planning agreement by failing to turn over proceeds of sales to bank); *In re Clark*, 30 B.R. 685 (Bankr.W.D.Okla.1983); *In re Ricker*, 26 B.R. 862 (Bankr.E.D.Tenn.1983); *In re Smith*, 11 B.R. 20 (Bankr.N.D.Ohio 1981).

██ When ruling on a motion for summary judgment, the moving party has the burden of establishing that there are no issues of material fact and that he is entitled to judgment as a matter of law. *In re Inforex, Inc.*, 26 B.R. 515 (Bankr.D.Mass. 1983). I find that Plaintiff has met this burden with respect to Walter E. Lindberg's liability under § 523(a)(6). The principal facts here are undisputed. At the

pre-trial hearing on this matter, debtor, by his counsel, admitted that the facts set out in GECC's complaint and supporting affidavits were true. Thus the only remaining issue before the Court is whether they present a suitable case for nondischargeability. I find that they do. It is undisputed that Mr. Lindberg deliberately instituted the scheme described to prevent GECC from becoming aware of the sale of the collateral. The extent and longevity of his practice, despite his knowledge that his business was failing and there was virtually no way to repay GECC, establishes his intent to harm GECC by depriving it of the value of its collateral, in conscious disregard of Lindberg's duties to pay GECC from the sale proceeds.

Thus, I find that Mr. Lindberg willfully and maliciously deprived GECC of the value of its security, and that the debt thereby incurred should be excepted from discharge under Section 523(a)(6) [3].

Accordingly, I hold that GECC is entitled to summary judgment and entry of a separate judgment against Mr. Lindberg with respect to Count III of the Complaint. Because of this ruling, it is unnecessary to decide whether the debt is also nondischargeable by virtue of §§ 523(a)(2) and (a)(4).

---

**3.** It does not matter that the debt technically was incurred by Lindberg's, Inc. Since Mr. Lindberg actively participated in the conversion and made the decisions to sell the inventory and to fail to turn over the proceeds, the debt is nondischargeable in his personal bankruptcy. *In the Matter of Penning,* 22 B.R. 616, 619 (Bankr.E.D.Mich.1982).