In re Evelyn J. WOOD, Erik C. Moebius, Debtors.

Michael A. WASH, Plaintiff,

v.

Erik C. MOEBIUS, Defendant.

Bankruptcy No. 93–12067–FM.
Adv. No. 93–1330–FM.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

April 8, 1994.

Michael M. Probus, Jr., Law Offices of Michael A. Wash, Austin, TX, for plaintiff.

William W. Rittenhouse, Austin, TX, for defendant.

Harvey D. Caughey, Austin, TX, for Chapter 7 trustee.

## MEMORANDUM OPINION PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on Plaintiff's Motion for Summary Judgment on March 23, 1994. The Court has considered pleadings of the parties, the competent summary judgment evidence, the argument of counsel, and the legal authorities cited to the Court by the parties. Based thereon, the Court enters this Memorandum Opinion as a statement of those material facts which are not in genuine dispute and the conclusions of law upon which the Court's ruling is based.

### Material Facts Not in Genuine Dispute

On June 28, 1993, there was filed in Civil Action No. SA–92–CA–0566 styled *Abelia Garcia, et al. v. Michael A. Wash, et al.*, ("Prior Action") an Amended Judgment rendered by the Honorable Edward C. Prado, United States District Judge for the Western District of Texas, San Antonio Division which granted the Motion for Sanctions filed by Michael A. Wash, the Plaintiff herein, pursuant to Rule 11 of the Federal Rules of Civil Procedure and assessed against the Plaintiff's counsel therein, Erik C. Moebius, sanctions in the amount of $15,403.62. That Judgment amended the prior Judgment entered on May 24, 1993. The Amended Judgment was entered pursuant to the Memorandum and Recommendation of the Honorable Robert B. O'Connor, United States Magistrate, filed in such case on March 18, 1993 which was accepted by Judge Prado by Order Accepting Magistrate's Recommendations filed May 24, 1993.

The Memorandum and Recommendation of the United States Magistrate is 114 pages in length. It speaks not only to the Motion for Sanctions filed by Wash but also to Motions for Summary Judgment and Motions for Sanctions filed by all Defendants therein. It is an exhaustive and thorough report which recommends to the district judge many findings of fact and conclusions of law with regard to the matters which were actually tried before him pursuant to the Order dated November 18, 1992 entered by Judge Prado in such proceeding referring all pretrial matters to Judge O'Connor.

The Plaintiff relies upon those recommended findings which were accepted by Judge Prado to support his Motion for Summary Judgment here. The findings of fact most relevant to this case are the following:

1. that "... plaintiffs' counsel [Moebius] filed plaintiffs' federal civil rights claims against the private defendants [including Wash] without having first conducted a reasonable inquiry into the factual bases for those claims." See Exhibit P–1, pp. 84–85, attached to Plaintiff Michael A. Wash's Motion for Summary Judgment;

2. that "... plaintiffs' counsel filed plaintiffs' federal civil rights conspiracy claims against the private defendants with full knowledge of, or wanton and reckless disregard for, the absence of any facts to support same and for the purpose of harassing those defendants with having to defend themselves in yet another forum." See Exhibit P–1, p. 85, attached to Plaintiff Michael A. Wash's Motion for Summary Judgment;

3. that "plaintiffs' counsel filed plaintiffs' original, first amended, and second amended pleadings in this lawsuit without having first made a reasonable inquiry into the factual basis for plaintiffs' federal civil rights claims against the private defendants and for the purpose of harassing the private defendants and increasing those defendants' costs of litigation." See Ex-

hibit P–1, p. 85, attached to Plaintiff Michael A. Wash's Motion for Summary Judgment;

4. that the record in the case "... demonstrates an abuse of the legal process by plaintiffs' counsel in the filing of plaintiffs' federal civil rights claims against the private defendants." See Exhibit P–1, p. 85, attached to Plaintiff Michael A. Wash's Motion for Summary Judgment; and

5. that "plaintiffs' claims against the private defendants were, and are, (1) based neither upon existing law nor a good faith argument for the extension, modification or reversal of existing law, (2) based upon inadequate legal support, and (3) motivated by improper purpose." See Exhibit P–1, pp. 86–87, attached to Plaintiff Michael A. Wash's Motion for Summary Judgment.

Although not restated herein in full due to the length of the documents, this Court incorporates by reference herein all of the findings of fact proposed by Judge O'Connor in his Memorandum and Recommendation and accepted by Judge Prado insofar as they relate to Wash's Motion for Sanctions which was one of the pending motions determined thereby.

### Issues

1. Applicability of collateral estoppel?

2. Do the subsidiary facts determined in the Prior Action compel a determination of nondischargeability of the Rule 11 sanctions awarded to the Plaintiff against the Defendant in the Prior Action under § 523(a)(6)?

3. Under § 523(a)(7)?

### Conclusions of Law and Analysis

■ 1. *Collateral Estoppel.* Clearly the doctrine of collateral estoppel may be applied in dischargeability actions. *Matter of Shuler,* 722 F.2d 1253 (5th Cir.1984), cert. denied, 469 U.S. 817 (1984). In order to determine whether to apply collateral estoppel in any particular case, the Bankruptcy Court must have before it sufficient portions of the prior record in order to be able to determine that the subsidiary facts were actually litigated and necessarily determined by the prior court. *In re Nix,* 92 B.R. 164 (Bankr.

N.D.Tex.1988). "If the prior record sufficiently established the subsidiary facts on which the judgment was based, the court then independently determines whether these subsidiary facts establish the elements of nondischargeability as defined by federal bankruptcy law." *Id.*

In the present case, we have before us the very detailed and complete 114–page Memorandum and Recommendation of the United States Magistrate, the 17–page Order Accepting Magistrate's Recommendations of the District Judge, and the ultimate Amended Judgment. An examination of these documents clearly reveals very detailed subsidiary facts which were found by that Court, which support that Court's ultimate ruling in the Prior Action, and which were viewed by it as necessary to its ruling. These factual findings are in sufficient detail that this Court can determine whether they also establish the independent elements of nondischargeability under the § 523(a) causes of action which are at issue in this adversary proceeding.

■ Further, "Collateral estoppel may be applied to a trial court finding even while the judgment is pending on appeal." *In re Nix,* supra at p. 167, citing *Southern Pacific Communications Co. v. American Telephone & Telegraph,* 740 F.2d 1011 (D.C.Cir.1984). In this case, Moebius alleges that he effectively appealed Judge Prado's Amended Order. Plaintiff disputes that. Regardless, the existence of an appeal does not prevent the rendering of a decision in this matter.

■ 2. *Nondischargeability Under § 523(a)(6).* In order to apply collateral estoppel in this case, the factual issues under § 523(a)(6) sought to be precluded must be identical to those determined in the prior action, they must have been actually litigated, and the determination of these issues must have been necessary to the resulting judgment. *Shuler,* supra at p. 1256, n. 2 [citing *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 151 (5th Cir.1981)].

The issue in the Prior Action was whether Moebius violated Rule 11 of the Federal Rules of Civil Procedure which provides in relevant part as follows:

"The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading ...; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass ...". Rule 11, F.R.C.P.

The District Court found among other things (1) that Moebius had filed his client's federal civil rights claims against Wash without having first conducted reasonable inquiry into the factual basis of those claims *and with full knowledge of,* or *wanton and reckless disregard for, the absence of any facts to support the same* and *for the purpose of harassing those defendants* with having to defend themselves in yet another forum, (2) that Moebius filed plaintiffs' original, first amended, and second amended pleadings in this lawsuit without having first made a reasonable inquiry into the factual basis for plaintiffs' federal civil rights claims against the private defendants and *for the purpose of harassing* the private defendants and increasing the defendants' costs of litigation, (3) that the record demonstrates *an abuse of the legal process by plaintiffs' counsel* in the filing of plaintiffs' federal civil rights claims against the private defendants, and (4) that the plaintiffs' claims which were brought by Moebius against Wash were based neither upon existing law nor a good faith argument for the extension, modification, or reversal of existing law, were based upon inadequate legal support, and were *motivated by improper purpose.*

Also contained as part of Judge O'Connor's recommended findings accepted by Judge Prado is the following:

"Seldom, if ever, before has this Court been witness to a civil lawsuit in which a party has asserted more unsubstantiated, scurrilous allegations of perfidy on the part of a group of defendants that has been presented by plaintiffs herein in their Second Amended Petition [sic]. The plaintiffs allege that the private defendants bribed and conspired with no less than two separate state district court Judges for the purpose of depriving the plaintiffs of fair judicial proceedings. Such allegations necessarily draw into question the integrity of the individual defendants, two of whom are licensed attorneys, the two state court judges with whom the private defendants allegedly conspired, and the judicial process itself. Yet, despite several efforts by this Court to prod the plaintiffs into providing, if not proper summary judgment evidence supporting their broad-ranging allegations of corrupt activities on the part of the defendants, then at least fact-specific allegations supporting same, plaintiffs have furnished this Court with not even a scintilla of evidence establishing that any of the private defendants ever bribed or conspired with either of the two state district Judges mentioned plaintiffs' Second Amended Petition [sic]. Innuendo is no substitute for fact; stridency no substitute for evidence. Inferences of a civil rights conspiracy can only be drawn from legally admissible evidence, of which the record in this case is totally devoid. The plaintiffs' counsel's actions in filing plaintiffs' Second Amended Petition [sic] in this lawsuit constituted an abuse of the legal process rarely approached in the annals of this Court."

See Memorandum and Recommendation of United States Magistrate, pp. 87–88.

After hearing the Plaintiffs objections to the United States Magistrate's Memorandum and Recommendation, Judge Prado overruled those objections and accepted the Recommendation.

So, the District Court in the Prior Action has found as a matter of fact that with regard to the Plaintiff Wash, the Defendant Moebius caused pleadings to be filed "for the purpose of harassing", "without having first conducted a reasonable inquiry into the factual basis of those claims", "with full knowledge of, or wanton and reckless disregard for, the absence of any facts to support the same", which conduct "demonstrates an abuse of legal process by" Moebius and that

all of such action was "motivated by improper purpose".

Were the foregoing subsidiary facts actually litigated? There can be no doubt about it. They clearly were litigated, without question.

Were they necessary to be determined for the decision to be rendered in the prior Federal Court matter? Absolutely. The foregoing quoted findings are virtually identical to the provisions of Rule 11 which one must prove in order to establish a violation of that rule.

So the question becomes whether the subsidiary facts found in the prior Federal Court action are identical to those in this action that are required to be proven in order to establish a violation of § 523(a)(6). The answer is an unqualified "yes, they are."

█ In the Fifth Circuit "willful" as used in § 523(a)(6) means "intentional" and the term "malicious" means "without just cause or excuse". *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir.1983).

> "Willful" as used in § 523(a)(6), means deliberate or intentional. "Malicious", as used, means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm.

*Norton v. Dean (In re Dean)*, 79 B.R. 659, 662 (Bankr.N.D.Tex.1987).

Do the findings of fact in the Prior Action establish that Moebius' action was intentional? Clearly they do. Moebius, as attorney for the plaintiff in the Prior Action, caused the filing of his client's alleged federal civil rights conspiracy claims as contained in the plaintiff's original, first amended, and second amended pleadings. Moebius' position that the Prior Action fails to establish that he intended to injure Wash is not responsive as the inquiry is not whether there was an "intention to injure" but instead whether the act taken which resulted in the injury was intentional. Here, without question, the Prior Action establishes that Moebius' actions which resulted in the injury to Wash were wilfully taken; that is, he intended to take the actions he took and those actions resulted in the complained of injury.

█ Was Moebius' conduct malicious? Neither ill will or specific intent to do harm is required for a finding of malicious to be mandated under § 523(a)(6). Here the Prior Action has determined that Moebius' action was taken "for the purpose of harassing" Wash among others, that his action was "motivated by an improper purpose", and that it amounted to "an abuse of the legal process". Clearly, those findings are equal to and support a determination in this matter that Moebius' conduct was "without just cause or excuse" or in "conscious disregard of his duties" as a practicing attorney under Rule 11.

The subsidiary facts upon which the Amended Judgment was entered in the Prior Action having been actually litigated, having been necessary to the determination of the resulting judgment therein, and being identical to the facts which Plaintiff herein must prove by a preponderance of the evidence, Defendant is collaterally estopped from relitigating them. Judgment is mandated for the Plaintiff determining that the Amended Judgment against Moebius in the amount of $15,403.62 entered in the Prior Action in favor of the Plaintiff is not dischargeable.

█ 3. *Dischargeability Under § 523(a)(7)*. To the extent that the Amended Judgment represents "a fine, penalty or forfeiture ... payable to and for the benefit of governmental unit, and is not compensation for actual pecuniary loss, ...", it is nondischargeable. 11 U.S.C. § 523(a)(7).

Clearly, the central purpose of Rule 11 is to deter frivolous lawsuits. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 879 (5th Cir.1988) (en banc). "Sanctions also insure, to a large degree, that victims of frivolous lawsuits do not pay the expensive legal fees associated with defending such lawsuits ..." *Id.* citing *United Food & Commercial Workers v. Armour and Co.*, 106 F.R.D. 345, 349 (1985). "However, we would caution that '[w]hether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the Rule, *the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating*

the Rule.' *Donaldson* [*v. Clark* ], 819 F.2d [1551] at 1556 [ (11th Cir.1987) ] (emphasis added)." *Id.* at 877.

This Court has found three different results by courts in applying § 523(a)(7) in cases such as this.

One bankruptcy court, in deciding that Rule 11 sanctions imposed upon a debtor in a Chapter 11 case for actions taken therein are not discharged in the Chapter 7 case to which the debtor converted, stated what seems to be a "per se" rule:

> Can a Rule 9011 sanction be discharged? This court must answer that question with a resounding 'NO'! To allow the offending party to discharge a Rule 9011 sanction would totally defeat, destroy, and emasculate its purpose.

*In re McIntyre,* 96 B.R. 70 (Bankr.S.D.Miss. 1989).

Other courts have determined that the "plain meaning" of § 523(a)(7) compels a ruling of nondischargeability only if the award is both payable to *and* for the benefit of a governmental unit. *In re Strutz,* 154 B.R. 508 (Bankr.N.D.Ind.1993). *In re Ellwanger,* 105 B.R. 551, 555–6 (9th Cir. BAP 1989) ("Congress specifically created an exception to discharge for noncompensatory damages. In establishing the exception Congress clearly determined not to allow nongovernmental entities to seek to have penalties and other noncompensatory determined nondischargeable."). Another bankruptcy court determined that costs awarded by the Idaho Supreme Court in favor of the Idaho State Bar in disciplinary proceedings against the debtor/lawyer were nondischargeable under § 523(a)(7) because the Idaho State Bar was a governmental unit. *In re Williams,* 158 B.R. 488 (Bankr.D.Idaho 1993). See also *In re Corbly,* 61 B.R. 851 (Bankr.D.S.D.1986), on reconsideration, 149 B.R. 125 (Bankr. D.S.D.1992) (Portion of contempt judgment payable to a municipality which was determined to be a fine payable to and for the benefit of a governmental unit was nondischargeable since it was noncompensatory in nature).

Still other courts have held similar judicial fines or penalties nondischargeable even though payable to a private litigant. *In re Winn,* 92 B.R. 938 (Bankr.M.D.Fla.1988) (A contempt judgment payable to the opposing party was determined not to be compensation for actual pecuniary loss, even though civil in nature, and to be for the purpose of vindicating the dignity and authority of the court and, therefore, for the benefit of a governmental unit.). *In re Klein,* 31 B.R. 947 (Bankr.Colo.1983) (Contempt fine for failure to deliver children in accordance with custody order was a penalty imposed to uphold the dignity of the court and was noncompensatory in nature; therefore, it was nondischargeable even though payable directly to the opposing party.) *In re Marini,* 28 B.R. 262 (Bankr.E.D.N.H.1983) (A fine for violation of a temporary restraining order construed to be primarily to uphold the dignity of the court even though payable directly to the opposing party and therefore nondischargeable.)

The language of § 523(a)(7) is clear and unambiguous. It holds a debt nondischargeable to the extent it is a "fine, penalty, . . . payable to *and* for the benefit *of a governmental unit,* and *is not compensation for actual pecuniary loss, . . .* ". (emphasis added). The Supreme Court of the United States has told us bankruptcy judges simply to look at the "plain meaning" of the statute. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

As a least one other bankruptcy court has put it,

> This court must respectfully and reluctantly disagree. Although there are certainly excellent policy reasons for the 'totality of the circumstances' inquiry adopted by *Marini* and its progeny, that type of analysis is demonstrably at odds with the plain meaning of the statute.

*In re Strutz,* supra at 510. The language of § 523(a)(7) is clear. In order to be nondischargeable the fine or penalty must be "payable to *and* for the benefit of a governmental unit". Further, it must not be compensatory in nature. In this case, the Rule 11 sanctions are not payable to a government unit but to a private litigant. Further, they are clearly compensatory in nature as they represent

attorney's fees incurred by Wash in the defense of the frivolous action brought by Moebius. The fact that one of the purposes for which the sanction was awarded was to uphold the dignity of the legal process in federal court as well as the court itself does not allow this Court to dispense with the other stated requirements of § 523(a)(7). Accordingly, the debt in question is dischargeable under § 523(a)(7).

An Order of even date with this Memorandum Opinion will be entered pursuant to Rule 59, F.R.C.P.